17-2458 United States of America v. Bernard Greenspan Mr. Goldberger Good morning. May it please the court, my name is Peter Goldberger. It's my privilege to represent Bernard Greenspan, who is the defendant below, and of course the appellant here. I'd like to reserve two minutes of my time for rebuttal. Thank you. So Dr. Greenspan was convicted after a trial on ten counts, including the anti-kickback provisions of the health care law, travel act on a theory of New Jersey commercial bribery, and honest services wire fraud, as well as a conspiracy, a single conspiracy that would encompass all three objectives. So all the counts, which is to say all of these statutes, require that the government prove willfulness or a similar high level of subjective intent, such as intent to defraud or intent to violate a fiduciary duty owed by a doctor to his patients. Our first two issues advance challenges to rulings of the trial court that deprived Dr. Greenspan of his right to defend himself through legitimate efforts to raise a reasonable doubt that went to these criminal intent elements. How is the evidence of medical necessity relevant given the government's theory, at least the overwhelming theory that they pressed, that the problem was your client steering patients to be a less, not that he was ordering unnecessary medical costs? The answer to that question lies in the wording of the anti-kickback statute as applied to those three counts, but we need to remember that although we have talked mostly in the appeal about anti-kickback, there are a larger number of other counts that have other elements. Yes, that was the government's theory. The anti-kickback statute as applied to the recipient of the payment, the payment becomes a kickback if it is willfully received by, in this case the doctor, in return for referring patients to receive services that Medicare will reimburse. Doesn't steering do that? Steering would do that, but the question was for the jury of whether he was steering. It's not what the government's theory was, it's what the jury would believe beyond a reasonable doubt. How does evidence of medical necessity inform a jury assessment about whether he was steering or not steering? The government's argument was in part, very dramatically, the doctor is selling his patient's blood for money, and in another moment that the doctor was influenced to order certain tests by being paid an extra $10 by the blood lab if he would order these tests. Those arguments put in issue his, even on the kickback counts, his fidelity to the patients. That is, he was accused of lacking fidelity to the interests of his patients, and he was entitled to respond to that. And he testified that he was faithful to his patients, and he testified that, you know, look, I order these tests, and these tests are important, and 50% of my patients don't even get them because it's inconvenient, and it's, you know, so it was good for my patients because if I have a phlebotomist in the house, they're actually going to get these tests. Exactly right. He said his piece about that, right? Yes. So what, how could an expert have illuminated that any differently? Greenspan said, I'm a good doctor, I take care of my patients, these are necessary, all that good stuff. And he's the defendant in a criminal case, and he has an interest in the outcome, and if his testimony is corroborated by an expert who says objectively what he says is consistent with the facts, then... But the expert can't change his intent, though, right? The jury can infer his intent or a reasonable doubt about his intent from whether that testimony you referred to is credible. But the government argues with some force that it is not a defense to a bribery or kickback, other, you know, public corruption statute, that I was going to vote this way anyway, I was going to make these contracts, etc. There's a harm from the corruption that's distinct from actually having changed the outcome, and, you know, not changing the outcome is not a defense. That is true in a public bribery case under 201. I'm looking, and that's why I started in response to Judge Krause with the language of subsection B1 of the anti-kickback statute. This is not a bribery case, it's a kickback case. And these are two different offenses, and the kickback statute in particular here talks about action taken in return for the payment. Not concurrent with the payment, not... And it's... What Your Honor's question focuses on is most pertinent to prosecution of the payer, less so to the prosecution of the recipient of a kickback. Do you have any evidence that supports that, that it is not, that it is, in fact, a defense in that situation? I'm not calling it a defense. I'm calling it evidence that's logical, logically relevant to whether his corrupt intent, in particular his statutory intent of acting in return for the payments, was proved beyond a reasonable doubt. I have not seen anti-kickback statutes that focus, as I am focusing at this moment, between B1 and B2 that use different language, unlike the bribery statute where the payer receives in the same statute. Here we have the payment statute is B2. The received statute is B1. And the precise language of the two is a little different. The intent of the recipient is understood to be, to have to be proved, is written in the language of the statute as something that has to be proved at a somewhat higher and more specific level, and perhaps because these cases arise in this circumstance. This? Yeah. So that argument could carry a lot of force if the government's theory had been exclusively that this was about ordering unnecessary medical tests. Oh, yes. It would have been squarely on that, but that wasn't their theory. And given that their theory, what they're pressing, including through their closing arguments, is about steering. And they expressly disavowed in their closing rebuttal, it doesn't matter if this was, the lab was good or bad, or the tests were necessary or not necessary, and go on to talk about the steering activity that was, that the acts were the kickback. Why, even if there was error in the sense of this having some relevance, why wouldn't it be harmless error? Because the testimony of not just the doctor, but of all of his staff, was that they didn't steer to favor BLS. And the jury could believe or not believe that. And whether they believed it beyond a reasonable doubt would be affected by whether there was objective evidence consistent with that testimony. And it seems logically more likely that they did not steer. That if the office administrator, we're going to send our blood to them, let's try to send our blood to them. Isn't that supportive of this hearing? And also wherever the wherever their insurance would cover and they were free to go outside to another lab. And if they didn't, I think the testimony would. I mean, it's for the jury to interpret that. But this is not an invention of the cooperating witness. No. His own office manager is saying. Yes, there was a basis in the testimony for the jury to convict. We're not saying the evidence was insufficient. I'm saying that the evidence would have been more likely to raise a reasonable doubt if it was corroborated in this way. Because it's objectively more likely. Innocence is objectively more likely when all the conduct of the office is in the patient's medical interests. So the argument that the court abused his discretion in keeping this out is that in a way that does not relate directly to the government's theory of the case. Or directly to the jury's determination about whether there was steering or not. It cast your client in a bad light in front of the jury because it suggested that he was not maintaining his fiduciary duties to his patients by ordering unnecessary tests. Well, first of all, that's directly relevant to seven of the 10 counts, which not the kickback. As opposed to you're talking about the government's theory on the kickback counts. But the seven of the 10 counts involved a breach of duty. But let me go to something you said very early in your question about abuse of discretion. The trial judge's decision here, Judge Wall's decision was, and the government tries to defend this in their brief, that this testimony was entirely irrelevant. Not that it was confusing or some other basis to be excluded in discretion under 403. Whether it was entirely irrelevant is a question of law, not of discretion. I don't know if my colleagues want to go on with the first count, but I do want to hear a little bit about the second count and the hearsay aspect in particular. Because there's an issue of preservation, not reserve. Maybe you can touch on that briefly. But more generally, even if there's an error here, there was a lot of, you know, there was an advice to counsel of instruction here. And there was no tender of proof as to what else your client would have put in but for this ruling. So how was your client's defense compromised in a way that doesn't appear to be at the most harmless level? So the error is, first of all, whether the error is harmless, we have to just be sure we're on the same page about what the error was. The error was saying that the advice given to him by his lawyer couldn't be repeated because it would be hearsay. And that's wrong as a matter of law. The lawyer's advice in an advice of counsel situation is offered for its effect. Not the truth. Classically for its effect on the hearer, not for its truth. Right? And the mistake in the evidence law was made by the prosecutor and the judge. I hesitate to start by blaming defense counsel, although defense counsel is surely not blameless here. But the prosecutor said objection hearsay and the judge sustained the objection on grounds of hearsay. What was wrong was defense counsel's response to that objection saying, oh, it comes with a hearsay exception, instead of saying it's not hearsay. And I think that's excusable and doesn't give us a plain – that's not the kind of waiver of an issue that puts us into plain error. Right. Now, there is a problem. Did you want to say more? Why? Having acceded to the premise that it was hearsay by arguing that it would have been an exception, why shouldn't we treat this as plain error? That's an inference. He didn't concede it was hearsay, but it's an inference. That's perhaps too glibly said in the reply brief. In a class on evidence, it's wrong. But I think it's too much to ask of a trial lawyer not to make that mistake at pain of losing the right to raise the issue on appeal. He's opposing the prosecutor's fundamental error of evidence law, which was endorsed by the judge. He offered it in evidence. It's not his offer. The defense counsel offered it in evidence and insisted it was admissible. That's my position on that. Okay. So what about the – There were other points that I lost track of. Judge Bevis' point was, you know, why – you've got a lot else there. Yes. So my main argument in response to that is similar to the argument I made on point one – this is point two of our brief – which is that because, unfortunately, the lawyer had died, we're stuck with the clients being the vehicle for presenting this testimony. The client comes – the defendant comes before the jury with a – you know, in a disfavored position in a trial. It's just a fact. And we're looking for, you know, the fullest opportunity to give him the chance for the jury to have that reasonable doubt about his intent by virtue of acting on behalf of the lawyer. So when the defendant says, I checked with my lawyer and my lawyer told me it was okay, and he's not allowed to say what that conversation was and what the substance of it was, he is unfairly disadvantaged in the credibility of his claim of reliance on the lawyer's testimony. Is your argument – that sounds like it's not really an advice of counsel defense. It's an objection to the exclusion of testimony that simply would have gone to credibility. Let me ask this a different way. Can you clarify, are you actually posing an advice of counsel defense concerning the consulting payments? That is, that there had been full disclosure to counsel for the consulting payments and that your client was following counsel's advice in good faith? Or is your argument that Nichols' unrebutted testimony about the legal advice on the facilities use agreement, not the second part of the scheme that's really the basis for the charges, influenced the jury's overall assessment of your client's credibility? And is the latter really an advice of counsel defense? It is an advice of counsel defense, and it's both of what you say. It's not an either or, it's both. But it's fully an advice of counsel defense because the client testified at one point, the defendant testified at one point, I consulted my lawyer about all of these agreements. And when he's hobbled about those conversations, he doesn't get to explore it and then have the finger pointed at him and say you weren't specific enough. I think it's just the sandbag here is by the prosecution, having tied his hands in presenting this defense, which is – it's a funny kind of defense. It just does raise a reasonable doubt about intent. It's not an affirmative defense. It's not an affirmative defense, but it has these requirements that are sometimes called elements. It's funny that way. It confuses people, and they often seem to think the burden's on the defendant. There was that error in the jury instructions here, errors of that kind, all plain error. And again, yes, of course, having this defense would have corroborated the credibility of his testimony because he was put in this unfortunate position of having to advance this defense himself. And doubly unfair because the prosecutor's cooperator at one point said, oh, I sat in on one of those meetings, and the lawyer was just telling him how to change the agreement so it would look like it was legitimate. The only thing we have on this record that he specifically was not allowed to testify about was what the lawyer said to rebut Nichols' testimony on the reason for avoiding round numbers and the actual number that they settled on. As Judge Hartman pointed out, we don't have any proffer from the defense about what else would have been said. That's true. There was no offer. And what we do have suggests that the defense got out that Nichols was the one who proposed this very specific number. He didn't know why. Nichols didn't even attend the meeting. His lawyer was ethical. He relied on the lawyer's advice. He wouldn't have signed his agreements without the lawyer's advice, and that he ran these various agreements by the lawyer. How, again, even if we take it as error and a misunderstanding of the hearsay rules for that specific additional testimony to be excluded, why wouldn't that be harmless? I don't think it's a fair reading of the record to say that Judge Walls ruled you can't advance what your lawyer told you in this meeting about this conversation, about this agreement. But I'm not saying whether you can or can't about anything else. The judge was saying, agreeing with the prosecutor, as a matter of law, I'm not letting you tell this jury what your lawyer told you. It's hearsay. If it was hearsay, it would be equally hearsay as to any argument. The defense counsel accepted acquiesce to the judge's ruling, and the defendant didn't violate that ruling. That's not fair to suggest that the judge was ruling more narrowly. That's not the way this record reads. Mr. Goldberg, we want to hear from you on the elocution issue, but I think we might. Do you want to do that now? Well, I thought maybe we'd hear from you on that after we press Mr. Sanders on it. Do you want to ask about competitive amendment? Yes. Do you want to do that now? Okay. I didn't understand. We're going to go to constructive amendment before you sit down. Okay, I was going to say that's in some ways the most interesting issue, although perhaps the easiest to rest on the briefs if I need to. Yeah. Well, on the constructive amendment issue, just so we're clear, you're not arguing that, even assuming it's a constructive amendment, that's structural error, right? I don't think the Supreme Court has decided whether constructive amendment is structural error. I have made that argument in other cases. I don't think I use that terminology here. It doesn't seem to be the direction that the cases are going on structural error. But this Court's case law on that is very strong. And I do think the Supreme Court, if I'm not mistaken, against my interest, but I think this is so, that the Supreme Court has said that you can't make a structural error argument on plain error. I don't think there's any plain structural error, according to the most recent Supreme Court cases. Your argument seems to rest on carrying over, because we are here in the realm of plain error, carrying over Simon's rebuttable presumption to the fourth prong, right? That is to a miscarriage of justice beyond simple prejudice. I wouldn't necessarily agree with it. Well, if I've misunderstood your argument, then please clarify. Because you seem to be arguing that we've got this presumption of prejudice, and therefore it's reversible plain error, and that's what we take from signs. Am I understanding your argument correctly? No, that's fair. How is that consistent with the language of signs itself? That is the acknowledgment that the presumption is rebuttable. There's got to be some way that it can still not be reversible. And in footnote nine, where we specifically discussed that, recognized that there could be situations where the Court of Appeals would still exercise its discretion under Rule 52B to not notice the plain error. Sure, and that was very much Judge Becker's way of writing. He certainly wouldn't have missed that point. And the rule doesn't supersede, the decision in signs doesn't supersede or contradict Rule 52B. So there are the four prongs, of course. Well, if that's the case, and we're not carrying over some irrebuttable presumption to the fourth prong, then we've got some intervening Supreme Court case law that tells us if we have evidence that is overwhelming and essentially uncontroverted, that that may be enough to conclude that it should not be deemed reversible. Even if we have plain error. That would be true. Why are we in that situation here? Because the evidence is certainly not uncontroverted. I mean, particularly as to these Christmas party payments, whether they were or were not bribes or kickbacks, and whether the jury would find them to be so if they were properly directed to those payments as the indictment should have directed them, then it would clearly be a miscarriage of justice because the defendant would be, akin to structural error, the defendant would be allowed to be convicted on something that is a different occasion of committing an offense than the grand jury accused him of. Okay, but wait a second. The indictment, first of all, the indictment doesn't, when it has the approximate date, it's not listing specifically Christmas party. It has approximate date. It realleges what came before, including paragraph 11, which has both the Christmas parties and the payments that came right around that time, and these have approximate or on or about language that wasn't in Critchley or the precedents that found constructive amendments. So why is this a constructive amendment at all? We are not arguing a constructive amendment by change of date. We're arguing a constructive amendment by change of payment. The indictment would be insufficient under the sixth amendment if it didn't tell, advise the defense what is the payment which is alleged to be a kickback. Except that, you know, this isn't an element, you know, and in cases like Sterone it's a different payee, a different item. This is just, you know, a different one in a series here. It doesn't look like the cases that have been found to be variants. Well, I think it's very much like Sterone. In Sterone the difference was the extortion, interstate extortion, in relation to the shipment of concrete out of Pennsylvania or the shipment of sand into Pennsylvania. I mean, it was absolutely on a low factual level, but it was about what was the transaction that was said to constitute the violation. And here the question is, is it reimbursement of the doctor's office for the cost of a Christmas party, which looks a lot like cultivating goodwill by a vendor, or was it payment of a consulting fee, which the government had evidence from which the jury could say was a phony cover-up of a kickback? Why shouldn't we think about it more like in the Seventh Circuit's decision in Thomas, with different narcotics transactions involving the same drug, they're fungible, maybe on a different date. Money is fungible. Why shouldn't we take that approach to anti-kickback transactions? Two transactions of fundamentally the same kind between the same party on a somewhat different date, that's an on-or-about problem. Unless there's something in the indictment that says which, unless we're changing the indictment that accuses you of this transaction, the one where you're wearing the blue jacket, but we're going to convict you of that one where you sold drugs but were wearing the yellow jacket? There's a due process problem. If the prosecution pulls a rabbit out of a hat at closing, it's something the defendant would never put on notice for to defend on. But the defense had plenty of notice about both of the December 2011 and both of the December 2012. They're all charged in paragraph 11 of count one. So I don't see how the due process interest here is implicated. First of all, the grand jury is authorized, and then the defense has had plenty of notice and is supposed to defend against all of these particular incidents that have been spelled out, and the on-or-about takes care of any minor date adjustment or discrepancy. It's not in or about early December of 2011. It's on or about December 12 of 2011 or whichever one it was. So it's a particular date in December, and there is a check that corresponds to that date. That is exactly misleading the defense into which payment they should be defending against until the prosecutor stands up in closing and says, or a completely different transaction that occurred two weeks earlier. But my point is both of those checks are spelled out with great specificity in paragraph 11 of count one. Which are not charged in charging language. They're background of the story. And they're incorporated into count two. Yes. Just a last question on this point. If we conclude or if we even assume that it's a constructive amendment, I understand correctly from your earlier answer that in light of Cotton and Marcus and Phuket, you agree the right question is if we get the first three prongs of claimant satisfied. The question then for this court is whether the evidence was overwhelming and uncontroverted. Right. Not just overwhelming, but overwhelming and uncontroverted. You agree that in light of the Supreme Court precedent that that would be the analysis we would need to undertake. Yes. And that that relates to the question of whether the evidence in question would be that which related to the charges in counts three and four. That is the dates of the Christmas party. Not the other transaction that the jury may have been convicted of. I don't think that's a per se rule that takes the place of casting the courts into disrepute and so forth. It's just a way of addressing that. You could also say if the defendant appears to have been sandbagged and the trial jury invited to convict him on something that the grand jury didn't focus on in bringing the charges, that also would cast the courts into disrepute and justify reversing on plainer. So did you want me to sit down or address the issue at all? We'll hear you on rebuttal on allocution and perhaps other matters. Let's hear from Mr. Sanders. Thank you, Mr. Thank you for your time. Thank you. Mr. Sanders, for the benefit of the court and to the detriment of yourself, would you argue backwards here and start with allocution? You would concede, would you not, that it's right to allocute is fundamental? I would. And for the record, I'm Stephen Sanders. I have the United States with the appellee. I agree that there is an error and that it's plain on this record. But under prong four, as we've argued in the brief, there's no possibility that someone could view the criminal justice system as being impugned by not awarding a remedy here when this defendant got the functional equivalent of an allocution before the sentencing judge through a four-paragraph acceptance statement, a video of 15 minutes depicting him and his family, and a downward departure. So his sentence is 20 months under the bottom of the advisory guidelines range. He got the benefit of not getting obstruction enhancement, which he clearly merited on this record. All right. So your argument is that there is a presumption of prejudice here due to the opportunity to allocute, but it's rebutted by all those things you just mentioned. Is that the essence of your argument? Well, I want to be clear. I do not agree that there's a presumption of prejudice. We think that Supreme Court authority has overruled or abrogated this court's decision in Adams that adopted that presumption of prejudice. What we're saying is even if you decide not to reach that question, you can go to prong four, where it's not a per se rule. Just as Judge Krause was asking Mr. Goldberger with respect to the constructive amendment argument, miscarriage of justice is a case-by-case issue. And on these facts, especially with, and I need to stress this, Dr. Greenspan hired special sentencing counsel for this sentencing hearing, Alan Ellis, who is a renowned expert on federal sentencing and who touted his experience on the record at this sentencing. He was asked, does your client want to speak? I know that's the error, but his response wasn't no. It wasn't just a no, it was no, we are taking an appeal. We've advised him to waive allocution. The only real error here is that the district judge didn't turn to Dr. Greenspan. Is that right? This all could have been solved. Exactly. Right? Exactly. I read that and I thought, gosh, all the judges to say, Mr. Greenspan, is that right? And he says yes, and then we're not here on this issue. Right? Right. But since we are here, we have to look at now what would be the effect on the criminal justice system to award a remedy in those circumstances where this clearly looks like it was a calculated decision. Aren't we bound by Palladino and Moreno, which postdate Cotton and Marcus and Pat? We seem to have said there that the fourth prong of plain error is satisfied once there's a violation of the right to allocation. I understand your argument, but that's not consistent with Supreme Court precedent. But if that is our controlling precedent in the circuit, what can we as a panel do with that? Well, I would ask you first to go back to Adams because Adams is a precedential opinion of this court that predates all those decisions and it would control under IOP 9.1, I believe it is. So if those decisions are inconsistent with an earlier precedential decision of this court, this panel is free to say, as it did in Adams, we look at miscarriage of justice on a case-by-case basis. And in this case, there simply would be none, even if you were to assume that the first three prongs of the plain error test were satisfied, as the Supreme Court did in Cotton. It went straight to prong four. If I may move to the – I'll work in reverse order to the constructive amendment point quickly. I do want to point out that the easiest way to resolve this claim, I think, is on the plainness prong of the plain error test because Mr. Goldberger's entire argument presupposes that by selecting a date, an on or about date for which there happens to be a payment, the grand jury necessarily must have been, you know, focusing on that to the exclusion of the payment a week earlier. And that's simply an assumption on his part that's not supported by anything except speculation. But that's the nature of a constructive amendment. We just don't know where there is a – here there was a precise day that is charged. That precise day matches up with a particular transaction that's identified among the overt acts. And then suddenly in closing argument, the government says, actually, jury, regardless of the grand jury having returned an indictment that charges a transaction on this particular date, which related to the Christmas parties, this jury can convict either on the basis of that transaction or a different transaction on a different date. Isn't that a plain error in the sense of it changes what is being charged and therefore we just don't know which one the jury relied upon given that? And also the judge's answer to the question on question four. Well, but that's only plain error if you assume the conclusion. I mean, as Judge Bevis pointed out, when you look at the count one and the overt acts, and you can understand how this happened because this is a kickback case where there's a continuing series of payments and then there's a continuing series of referrals in return for those payments. And so in December we happened to have a consulting check and not long thereafter a payment for the Christmas party. And then you'll see immediately after that there's charged a referral by Dr. Greenspan in the other direction. That happens both in 2011 in December and 2012. And it's understandable the prosecutor said both of these payments are consideration in return for the kickback that occurs after. But on this record, and I would point out to the court, I did not cite this in my brief. I alerted Mr. Goldberger that I would bring up an argument. There is an NPO from this court, and I know they're not presidential, but Judge Harden, he sat on that case and wrote the opinion in Hill, 684 Federal Appendix 140. And Judge Jordan in that case dissented and he essentially, in large measure, tracked the argument that Mr. Goldberger makes. But in that case, right, the government charged a call on a specific day at a specific time and a specific call number, and they had no evidence in that case of a call on that date or time. They put in evidence of something a week and a half later. And two judges of this court, the panel, said they first said the issue was waived, but they said even under planar review that would be at most a variance. And if it's a variance, it's not prejudicial on planar review. Here we had proof of a payment right on that date, and we had proof of a payment a week earlier. And in terms of prejudice and miscarriage of justice, we know what a jury would have done if there had been only one thing charged in that count. Count two was solely a consulting payment, and the jury unanimously convicted Dr. Greenspan on that. I don't know if my colleagues want to proceed on count three, but I'd like to hear some about count two, especially the – sorry. Well, go ahead to count two. I have a couple of questions later, but I do want to hear what you have to say about advice to counsel here, because this wasn't hearsay, right? And it shouldn't have been kept out as hearsay. I disagree with that premise on this point, and I want to be – I want to parse it, so give me a couple seconds to do this. Mr. Goldberger is focusing solely on what happened at trial. Let's go back to a pretrial motions hearing that occurred in October 2016. It was October 26, and the relevant pages are 606 to 628, where this issue first came up. And during that discussion, where the prosecutor is involved, it's just defense counsel and the judge. The judge is asking, what are the statements, and how are you going to get them in? And on page 617, for instance, of the appendix, Judge Walz says, you should have researched this by now. Again, page 620, you shouldn't be – this is Judge Walz. You shouldn't be able to ask an improper question. You should be entitled to do your research and find out whether you're entitled to ask that question. And then at the end of that discussion on page 628, well, do your research as to what hearsay and exceptions to hearsay mean. So the defense had their marching orders, right? Nothing happens until Dr. Greenspan gets on the stand, and this issue resurfaces. And mind you, between that time, the judge has excluded an expert on fair market value, and he's excluded an expert on whether the referrals are medically necessary. In other words, people who Dr. Greenspan wanted to bring in and have opinion evidence that all this was legal. So the government was certainly justifiably concerned by the time they got to trial that they did want this in for their truth, that they were trying to circumvent those rulings and say to the jury, not only was I informed that this was legal, but in fact an attorney blessed this. So I am not faulting at trial, I am not faulting defense counsel for not invoking the right numerical rule. Why would the defense even have to? Because the way this came up, this didn't come up for the first time in the defense case, this came up in the prosecution's case in chief. And the government sought to preempt an advice of counsel defense that had not yet been put before the jury by being allowed to elicit from Nichols its own witness what the lawyer had said. And in the colloquy, the sidebar with the judge, it was the government there that said that this was relevant for the anticipated advice of counsel defense to what the doctor understood, that this was not hearsay because it didn't go to the truth of the matter, it went to what was understood on the listener. So that argument had been put in front of the judge just shortly before the defense is trying to put it on essentially rebuttal testimony related to advice of counsel. Well, that goes both ways. So I have two answers to that. Number one, it should have alerted defense counsel that if they wanted it in only for the fact that it was said, they should have said so. But my second answer is there is a way, of course, to get an advice of counsel defense in where you get the attorney's statements in, but you also want them in for their truth. It's very easy for Mr. Goldberger to say everybody knows now looking back with hindsight what the relevance of this was. But all they have to do in response to the objection was say this isn't hearsay. It's not offered for its truth. And I will point you to the Scully decision, right? There's a judge. There's a place where his counsel said he doesn't cite the right rule, but he does say it goes to his state of mind. It bears on what his state of mind is. And maybe that's not as explicit as I like, but that might be enough to preserve the error. It might be with the background conversation that the court had just had with the government about it not going to the truth of the matter, but to the effect on the listener. Even if it does, there's a second problem, which, Judge Beebe, as you pointed out before, there isn't an offer of proof here as to what statements would have come out. And under Rule 103, that's an essential part of preservation. But even if you were to read this record and say he said enough to put the judge on notice, and I don't think for plain error purposes under the plainness problem there is, there's still that second problem where he did not make an offer of proof as to what those statements would have been. And without that, it's very hard for this court. I mean, I think it's easy to evaluate the prejudicial effect here of that exclusion because the evidence was overwhelming, and what we do know about the advice of counsel of defense was underwhelming. But that lack of offer of proof is very, very important. I don't know if I answered all of your questions. Well, the one thing where there was an offer of proof, that is the specific testimony he was seeking to leave but, was that the lawyer was the one who was presented with the idea of doing the facility use agreement, suggested that B, not a round number, and so they came up with this specific number. Were the government's witnesses allowed to testify to that? And then the defense is precluded from denying it because it's not able to speak to what the lawyer did in fact say in that meeting from the defense perspective. Why don't we have there something that is so fundamental as going to the defendant's credibility that it could infect the trial? Because there's some confusion in the record. There were two separate conversations. Dr. Greenspan denied, first of all, that Mr. Nicole even accompanied him to that meeting, but his testimony was going to be that the advice about the agreement came at a separate meeting at which Mr. Nicole was not a participant. And even as to that, on the first facilities use agreement, what more could the doctor have testified about than what he already did? That showed him the agreement. The agreement seems to deny a corrupt quid pro quo. But as we know from the record, the agreement has material falsehoods baked into it. It misrepresents the size of the office. It misrepresents the amount of space that is going to be rented. None of that stuff was told to the lawyer, and nothing Judge Wallace did prevented. He never said. In fact, he specifically overruled the government's objection as to what Dr. Greenspan told his lawyer. So nothing prevented him from saying that. And so the relevance of any inference of good faith could only matter here if he had disclosed that there were all these falsehoods baked into the agreement that he knew that they were trying to pay him to get blood. What lawyer would say, yeah, you know the guy is essentially trying to bribe you and you know it violates the anti-kickback statute even if you accept one corrupt payment. But go ahead, enter into this agreement because those representations in there that say there's no corrupt quid pro quo are false. No lawyer would have given that advice. That's true for the advice of counsel defense per se, but I understood Mr. Goldberger to be making a slightly broader argument that it went to the jury's ability to assess the defendant's credibility. Okay. Because he wasn't able to testify before the jury about what he said, what the lawyer said back to him, the nature of that conversation in terms and tone where the jury could make its own credibility assessment. I see my light is on when I answer your question. Mr. Dr. Greenspan's credibility was shot. And so I can tell you that he was confronted with, he denied, for instance, the fee, the cash payments for the certain tests. He got the $10 per. We had spreadsheets that were seized from Scott Nicole on the day of his arrest where we did a download from the computers that were seized during the search warrant that show those fee per test payments. We put a screenshot up there, I think somewhere around pages 610, 613 of my supplemental appendix. You'll see the Excel spreadsheets in full color where you can go into the cell and you'll see that the $110 are added on to the $1,500 contract. So he lied to the jury about that. He provided a specious explanation for the Christmas parties. His credibility was so damaged that his allowing him to testify as to what happened during that conversation when it had so little relevance anyway, as Your Honor pointed out later, this case turned on the consulting. I think that's a good segue into issue one, which is why Mr. Goldberger says, you know, the expert would have provided a more neutral witness, someone with more gravitas than the defendant himself. What's your response to that? Well, my response is first to apologize because I'm going to bring up another case that I should have cited in my brief, but it simply is a presidential opinion of this court issued shortly before I filed my brief, and I'm sorry I didn't find it. But basically it's called Greenfield v. Medco Solutions. Now, Judge Cross, if you were on that case. But in that case, this court accepted the government's argument. The government, I think, showed up as an amicus there, and I'll quote, the anti-kickback statute liability exists regardless of whether the doctor would have referred the patient absent the kickbacks and regardless of whether the patient would have chosen the service provider absent the referral. If that is the substantive law, then under Rule 401, the evidence he wanted to put in was logically irrelevant. No, no. That's a great argument on 403 that the evidence would probably have been used by the jury in the wrong way. It doesn't follow that it's logically irrelevant under 401 because under 401, it could still bear on if you're ordering additional tests or not. That bears on your state of mind as to whether you are trying to profit from this or it's not, in fact, a kickback at all. Now, the problem you have is we could easily have affirmed this if the district judge had done a 403 balancing. There is no balancing, and our president requires some kind of on-the-record balancing here. So you're forced to defend this on 401, and logical relevance is at a very low threshold. I agree it is. But I just want to back up one step. We're not stuck with 401. If there's no 403 balancing for you to review, and I think you can infer some balancing from the written opinion the judge issues, excluding the expert, that it would simply mislead the jury, you can still perform that Rule 403 balancing on appeal, or the flip side of that coin is perform a harmless error analysis, and for something that would have not moved the ball one iota, it can't have made a difference in this trial. Six years ago I stood here, Judge Hardiman, in the Colley case, also a Judge Wall's trial where we conceded he had erroneously kept out some marginally relevant defense evidence of Reverse 404B. And this Court said in a non-presidential opinion, which I cited in my brief, that yes, it was error, but the probative value of it was so low, and the evidence was so overwhelming, it wouldn't have made a difference. And Mr. Goldberger has conceded today, effectively, that this really only goes through the anti-kickback statute counts. It does not go to the travel act counts, because the payment of a bribe in return for a referral is per se a breach of fiduciary duty. It doesn't have to harm the patient or order a medically unnecessary test. And I think he's conceded that for a bribery liability under on the services fraud, there is no relevance here, for the same reason as there's no relevance in the political bribery context. It doesn't matter if what you were paid to vote on as a legislator ended up being good legislation or that you would have voted for it anyway. It doesn't affect your liability. Does the Court have any other questions? No, thank you, Mr. Chief. We'd ask you to affirm the judgment. Thank you. We'll hear Mr. Goldberger on rebuttal. I'll be as brief as I can. First of all, Greenfield says very little about the anti-kickback statute. You may even still remember it's almost all about the False Claims Act. What it says by way of background about anti-kickback is all about B2, not about B1. And that was kind of where I started when talking about kickback. That is, it talks about what you need to prove liability of the payer, not of the recipient. It doesn't talk about the difference from the point of view of the recipient. I mean, there isn't a player in the story of Greenfield whose position, like my client, is here. The government's argument that you should make, in effect, a credibility analysis on appeal and say, oh, he wasn't credible, his credibility was shot, he testified this, we had that evidence, is an argument that the Sixth Amendment right to jury trial bars on appeal. There is no such argument as Mr. Sanders is trying to make. You can't say on those kinds of lines what a jury is entitled to have a reasonable – to raise them to the low level of a reasonable doubt. And similarly is the substance of the right to counsel argument that the government makes, which is, oh, he didn't tell his lawyer this, and there's no evidence that he told his lawyer that. That's also, under context of advice to counsel, a jury question. If some evidence is offered by the defense, it is for the lawyers to argue and the jury to decide whether the information given to the lawyer was sufficient for the lawyer to give competent advice that the defendant could rely on. Yes? Would you address the issue of the elocution? And specifically, do you agree that, as we were discussing earlier, that Supreme Court case law suggesting that a categorical approach to errors, at least not structural errors, carries over to looking at the fourth prong when it comes to a violation of the right to elocution as well? I just want to make sure I understand the question, because I start by saying the panel cannot make that decision. And that's an argument for going on bank and saying, we need to change this line of panel decisions because of subsequent Supreme Court decisions. If you're asking what I would argue before the court on bank? Why is that consistent with Adams itself? The panel is down by it whether, in hindsight, you don't agree with the analysis or not. Adams goes to a presumption of prejudice. The question is, do we still look at the fourth prong, as you agreed when it came to constructive amendments that we do, at whether there is a miscarriage of justice? There's a miscarriage of justice if there's any possibility that the defendant's elocution, had he accepted a proper invitation, would have moved the judge to reduce the sentence in any way, which there certainly is. Are you agreeing with what I said earlier, that had the judge looked at Mr. Greenspan and said, is that right, what your counsel just said, you're not interested in elocuting, and Dr. Greenspan says, that's right, we don't have a problem here? I wouldn't use the words, is that right? But if the judge had followed Rule 32I and turned to the defendant and said, do you wish to make a statement on your own behalf before I impose sentence? Yeah, we wouldn't be here, of course. It wouldn't be an error. It wouldn't be an error. It wouldn't be an error, right. It might be an effective assistance of counsel if the lawyer had said, you're not allowed to speak if you're going to appeal after a trial, which is one interpretation of the statute. Why shouldn't we interpret counsel's statement that my client is not about to speak to you verbally as a very sort of brilliant strategic move because he was able to make a written submission, it was argument. It seems like you could interpret it as seeking to have your cake and eat it too, and you avoided the risk that Dr. Greenspan might say something that might alienate a judge who ended up giving him a downward variance. That might defeat the ineffective assistance claim, but it doesn't defeat the personal right of the defendant accepted by the Supreme Court in Green and carried forward in the rule. There are lots of personal rights, including ones more fundamental than this, that wind up getting excused at the third or here, we're talking about the fourth prong of Olano, right. It may be a fundamental right, but especially here, your argument has to be that this would cast public justice into disrepute, and which is part of the suggesting is on the contrary, granting relief here might cast it into disrepute if we rewarded what Judge Becker called sandbagging or gamesmanship, this was the defense tactic to have him not allocated. It was a defense tactic, but it was a defense lawyer's strategy, I agree, but it was not one that we know the defendant understood and acquiesced in, in the way that Rule 32I and the Green decision on which it's based was intended to protect, because this is a right 200 years older than the Bill of Rights. It is one of the most, I mean, when the defendant had no rights at all in a criminal case, couldn't testify, couldn't call witnesses, and you know this, and the one right the defendant had was to be spoken to face-to-face by the judge and given an opportunity to speak on his or her own behalf before being hanged. But is the question at prong four, as with constructive amendment, whether we have overwhelming and essentially uncontroverted evidence looking at this record that it wouldn't have made a difference in the sentence, that his failure to allocate did not affect in any way the sentence the judge imposed? Oh, I don't think you could say that at all. The judge went to 41 months, he could have gone to 36 months. Judges do this all the time, make little favorable adjustments if the defendant makes a good impression. We're talking about an 80-year-old man with a life dying of cancer, with a life history of good works, who took these payments in the worst light, just accepting the jury's verdict in a petty and greedy way, without impairing his service to his clients, and the judge is giving him three and a half years in prison. He could have given him three years in prison, two years in prison, easily by a favorable impression face-to-face. That's an argument that the test isn't met, right? That's an argument that the standard that is articulated in Cotton and subsequent cases has not been satisfied, and I understand that argument. But do we agree that that is the right question to be asking on plain error review, consistent with Adams? I think the right question to be asking is the one Judge Bevis asked, which is would it cast the system into disrepute to a well-informed person, not to a person that doesn't understand the values of our criminal justice system. Then do we make that assessment by asking whether there is overwhelming and essentially uncontroverted evidence that it didn't make a difference in the sentence? It's not uncontroverted. I understand. I don't really understand. I don't think the standard is met. I'm not aware of that. I'm not aware of the overwhelming and uncontroverted gloss on the fourth prong being applied outside the trial error context. I don't think it does apply to sentencing. I don't think we've seen that. There have been some recent plain error sentencing cases where I could go double check that, but I don't think so. Thank you very much. Thank you, Mr. Goldberger. We thank counsel for the excellent argument. We'll take the matter under its own.